IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| Margaret Innocent,<br><br>               Plaintiff,<br><br>vs.<br><br>County of Georgetown,<br><br>               Defendant. | Civil Action No.2:10-2598-RMG-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Doc. 23.] The plaintiff has pled claims for discrimination and retaliation, in violation of the Americans with Disabilities Act (ADA).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKGROUND**

The plaintiff began her employment with the defendant in November 2006 as a Senior Planner in its Planning Department. She was interviewed in person, and hired, by Boyd Johnson, then Director of Planning and Development. (Pl. Dep. at 26-30.)

On June 10, 2009, Johnson and Chief Planner Holly Richardson met with the plaintiff and a Joanne Ochal, the County's other Senior Planner, to inform them that the defendant was having to eliminate positions due to budgetary constraints and that both Senior Planner positions were being eliminated. (Pl. Dep. at 38-40; 51-52; Ochal Dep. at 15-16; Richardson Dep. at 35-36; Johnson Dep. at 48-59.) Johnson told the plaintiff and Ochal that a Zoning Administrator's position, recently vacated by retirement, would be converted to a combined Zoning Administrator/Senior Planner position; that the plaintiff and Ochal could apply for that

new position; and that whoever was not selected would be laid off effective July 1, 2009, the beginning of the County's fiscal year. *Id.* In fact the defendant's evidence shows, that 26 positions--including 3 in the Planning Department--were eliminated effective July 1, 2009 due to budget shortfalls.[1] (Troutman Dep. at 21-24; Johnson Dep. at 25-30.) The defendant offers that the two Senior Planner positions were eliminated rather than the two lower-paid Planner I positions both to save additional money--the Senior Planner positions carried higher salaries--and because, as a result of the economy, planned development activity in Georgetown County had declined substantially from its peak level in 2007. (Johnson Dep. at 25-31; 38-39; Troutman Dep. at 22-24.)

The defendant has submitted evidence that the plaintiff had a hostile reaction to the news and called the decision unprofessional and incompetent. (Pl. Dep. at 38-48; Richardson Dep. at 14-15; 25-28; 33; 36; Johnson Dep. at 36-39; 49-53.)

The plaintiff applied for the new Zoning Administrator/Senior Planner position on June 12, 2009 and was interviewed on June 17, 2009. (Pl. Dep. at 44-48.) On June 22, 2009, Johnson notified the plaintiff that he had selected Ochal for the new Zoning Administrator/Senior Planner position. (Pl. Dep. at 58-59.) Johnson, Richardson, and Troutman all agreed that Ochal would do a better job in the new position because she was supportive of, and enthusiastic about, the new organizational structure and the opportunity it afforded for improving service to, and relationships with, the public whereas the plaintiff was opposed to the new structure and was distinctly unenthusiastic about performing the enforcement duties--which are the dominant ones--associated with the new position. (Johnson Dep. at 28; 32-33; 36-37; 41-44; 46-47; Richardson Dep. at 25-31; 33-36; Troutman Dep. at 24-26; 33-35; 44-47.)

---

[1] Although the plaintiff summarily disputes these numbers with dubiously admissible newspaper evidence, the Court will not be required to ultimately resolve it.

On July 1, 2009, the date her separation from employment took effect, the plaintiff signed and submitted to the South Carolina Human Affairs Commission and Equal Employment Opportunity Commission ("EEOC") a charge of discrimination alleging that she was not selected for the new position and was terminated from her old position because of her hearing disability. (Pl Dep. at 58-60); [Doc. 28-3 at 11, 21]. About nine months later, she filed a second charge alleging that she was not selected for the new position because she opposed unlawful practices under the ADA. (Pl. Dep. at 60-64); [Doc. 28-3 at 22]. After investigating the charges, the Human Affairs Commission and EEOC both issued "no cause" determinations. (Pl. Dep. at 64-66); [Doc. 28-3 at 23-25].

## **APPLICABLE LAW**

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is

3

deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

The plaintiff has pled two claims pursuant to the Americans with Disabilities Act, one for discrimination in the elimination of her original position and the refusal to rehire her for a new one and a second cause alleging retaliation for her having opposed the same. The Court will address the defendant's argument concerning each, in turn.

**I.       ADA Discrimination Claim**

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). In general, a plaintiff seeking recovery for violation of the ADA must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise

4

discriminated against, on the basis of her disability. *Baird v. Rose*, 192 F.3d 462, 467-70 (4th Cir.1999).

The plaintiff, here, has pled two predicate factual bases. To make out her claim of disability discrimination, in this case, the plaintiff would prove either (1) that her original Senior Planner position was eliminated, and/or (2) that she was not selected for the new position of Zoning Administrator/Senior Planner, because of her disability, to wit, that "but for" her disability, these adverse employment decisions would not have been made. *See Gross v. FBL Financial Svcs, Inc.*, 129 S. Ct. 2343, 2350 (2009); *Marshall v. AT&T Mobility*, 2011 WL2192812, at * 3 (D.S.C. 2011).

Although a plaintiff may establish a disability discrimination claim through direct or indirect proof, the plaintiff, here, has only made recourse to the *McDonnell Douglas Corp. v. Green*, 11 U.S. 792 (1973*)* scheme of proof, properly employable in ADA cases. *See Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 57–58 (4th Cir.1995). Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802-05.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because " [i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 147 (citation omitted). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that

the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48.

To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that: (1) she is disabled; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raised a reasonable inference of unlawful discrimination." *Ennis*, 53 F.3d at 58.

The defendant does not contest the plaintiff's ability to establish the first three elements of her initial showing but disagrees that any issues of fact exist as to the fourth. As the defendant contends, the plaintiff may establish the fourth element of the *prima facie* case "either by showing that [comparably qualified] persons outside the protected class were retained in the same position or by producing some other evidence indicating that the employer did not treat [disability] neutrally." *Blistein v. St. John's College*, 74 F.3d 1459,1470 (4th Cir. 1996) (brackets by Fourth Circuit; internal quotations omitted); *accord EEOC v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir. 1992).

As indicated, the plaintiff has alleged discrimination in both the elimination of the Senior Planner position and the rejection of her application for the new Zoning Administrator/Senior Planner one. The Court concludes that no issues of fact exist as to the *prima facie* showing for either alleged predicate act.

**a.    Senior Planner Position (Elimination)**

*1. Prima Facie Case*

With respect to elimination of the Senior Planner position, the plaintiff has simply not worked the claim. She has made essentially no evidentiary showing. (Pl. Brief at 18-21.) Her argument amounts principally to no more than the following paragraph:

> However when reviewing the decision and considering all factors specifically Boyd Johnson the individual who decided the positions would be eliminated was the individual who made discriminatory decisions towards the Plaintiff after learning of her hearing impairment, the individual who made obvious favorable decisions towards non-disabled individuals the Court is not second guessing the decision to eliminate the two positions but to address the discriminatory animus of the Defendant.

(Pl. Brief at 19.) There are deficiencies. First, there is no evidence cited. Second, it is conclusory and generalized in its accusation. Third, and respectfully, it is not even meaningfully clear. The plaintiff seems to suggest that Johnson, the decisionmaker, harbored animus and made or took prior discriminatory decisions and actions. The plaintiff does not offer or substantiate any other detail. The plaintiff has submitted an affidavit which does not do better in associating discriminatory acts with particular individuals, much less Johnson. (See generally Pl. Aff.) Strangely, it says that she was subjected to a hostile work environment on account of comments about her "height," a characteristic which plainly does not enjoy statutory protection. (Pl. Aff. at 2.) This apparently is no typographical error. (Pl. Dep. at 57.) Regardless, the Affidavit does not associate any such antagonism with Johnson. No jury could conclude that this non-particularized allegation directed at no one in particular shows any sort of tendency by decisionmakers of the defendant, certainly not Johnson, to refuse to treat disability neutrally. In fact, the plaintiff expressly testified that Johnson never made any disparaging remarks about her hearing impairment although he knew that she was hearing impaired: "None, regarding hearing or height." (Pl. Dep. at 57; 80-81.)

7

Remarkably, the plaintiff still insists, "The Plaintiff has presented a *prima facia* case that can establish that she was targeted for elimination by Boyd Johnson." (Pl. Brief at 20.) She has pointed to no evidence that her disability was somehow treated non-neutrally. The Court cannot discern what possible events the plaintiff believes justify this conclusion.

Alternatively, the plaintiff suggests that the position was not eliminated at all but that the responsibilities of the Senior Planner position were merged into the new Zoning Administrator/Senior Planner one, for which she was rejected and Ochal retained. Accordingly, she implicitly complains that the fourth element of her *prima facie* case might be satisfied by evidence that the position was filled by another, outside the protected class, namely Ochal. The plaintiff does not actually create any issues of fact concerning the comparable responsibilities of the two positions. She simply and baldly insinuates, without evidence, that Ochal had been preordained for the new position. (Pl. Brief at 19.) She has not really explained, in a the way a jury could affirm, the relatedness of the relative positions. Moreover, the Court disagrees that these facts implicate a replacement-type showing for the fourth element. Because the plaintiff was permitted to actually compete for the new position, which she contends included the duties and responsibilities of the old, the selection of Ochal seems more properly considered with respect to that decision as opposed to any elimination of the Senior Planner position. In other words, the application for the new position resets the clock in a sense. Even if the duties, included, mirrored in some portion, those of the old Senior Planner, the plaintiff was given a new opportunity to apply. Discrimination, if any, seems more rightly measured there.

The Court, therefore, with respect to the Senior Planner position, need not reach the legitimateness of any explanation by the defendant for elimination of the position or evidence of pretext by the plaintiff. The *prima facie* case is flatly insufficient.

### b. Zoning Administrator/Senior Planner

With respect to the plaintiff's rejection for the new Zoning Administrator/Senior Planner position, the defendant does not contest the *prima facie* case. Instead, it has simply posited a legitimate, non-discriminatory reason for rejecting the plaintiff's application for the position.

### 1. Legitimate, Non-Discriminatory Reason

The defendant has the burden to produce a legitimate, non-retaliatory reason for taking the adverse actions it did. *See Lamb v. Qualex, Inc.*, 33 Fed. Appx. 49, 60 (4th Cir. 2002). The defendant submits that it selected Ochal over the plaintiff based on their relative interest in, and enthusiasm for, the position. Ochal "was extremely enthusiastic about the opportunity and felt it would be something that she really wanted to do and would be good at, and actually expressed that she thought it was a better organizational makeup than what we had previously used." (Johnson Dep. at 37.) In contrast, "Ms. Innocent certainly did not display any enthusiasm for the job and the new position and did not feel it was the correct thing for the County to do" and, when asked "about going out in the field and doing enforcement duties, . . . basically stated that she would do them and could do them well, but it was not something she wanted to do but would do if needed." *Id.*; (see also Richardson Dep. at 25-36; Troutman Dep. at 42-47; Johnson Dep. at 33-44; 47-53.) Relative enthusiasm and interpersonal skills are legitimate and non-discriminatory reasons to differintiate between applicants. *See Hillemann v. University of Central Florida*, 411 F. Supp. 2d 1354, 1365 (M.D. Fl. 2004); *Walker v. The Access Agency*, 2004 WL 2216526, at * 5 (D. Conn. 2004); *Wechsler v. RD Management Corp.*, 861 F. Supp. 1153, 1160 (E.D.N.Y. 1994); *Walker v. N. Alabama Electric Cooperative*, 1982 WL 376, at * 1 (N.D. Ala. 1982); *see also Amirmokri v. Baltimore Gas & Electric Co.*, 60 F.3d 1126,1130 (4th Cir. 1995).

### 2. **Pretext**

Because the defendant has proffered a legitimate, non-discriminatory reason for its actions, the plaintiff bears the burden of demonstrating that the real reasons were, in fact, unlawful. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000). The plaintiff contends that the relative enthusiasm of the plaintiff and Ochal was immaterial insofar as Ochal was unqualified for the position such that she ought not have been considered for the job in the first instance. The plaintiff emphasizes that 15 of the 20 duties of the Zoning Administrator/Senior Planner were related to zoning. (Pl. Ex. 6.) The plaintiff, however, confuses ultimate duties of the job for its initial "qualifications." While the plaintiff highlights the job functions of the "Position Opening" posting, she fails to acknowledge the actual qualifications portion of that notice:

> **MINIMUM TRAINING AND EXPERIENCE**
> Requires a Bachelor's degree in City or Regional Planning or closely related field and a minimum of four years experience in local government planning. or any equivalent combination of educational or work experience . . . . which provides the required knowledge, skills and abilities. High level of computer skills and valid SC Drivers License required.

*Id.*

While that paragraph includes experience in local government planning, it places no particular demands or restrictions on experience in zoning. Critically, it is undisputed that, at the time she applied, Ochal had a bachelor's degree in urban planning and geography; eight years experience as a planner in Illinois and Ohio; and a year and a half as a Senior Planner with the County. (Ochal Dep. at 8-16; Pl. Ex. 10 at 7-10.) Human Resources Director Greg Troutman testified that *both* the plaintiff and Ochal *exceeded* the prescribed qualifications for the job. (Troutman dep. 34, 33-37.) The plaintiff's independent declaration that Ochal does not meet criteria never actually included in the job qualifications portion of the posting is ineffective. She plainly did and, therefore, the plainitff's sole argument Ochal should never have been considered fails.

The plaintiff has not otherwise argued that she was, in fact, more enthusiastic for the job than Ochal. Accordingly, the plaintiff has not produced evidence of any pretext from which a jury might disbelieve the legitimate reasons proffered by the defendant.

## II. ADA Retaliation Claim[2]

The plaintiff also contends that the defendant retaliated against her for opposing these actions. She contends that a memorandum she submitted to the defendant was protected activity under the ADA and that the defendant refused to hire her for the new position as a result.

Section 503(a) of the ADA prohibits retaliation by an employer against an employee who enforces his rights under the ADA. *See* 42 U.S.C.A. § 12203(a). To prevail on a retaliation claim, the employee must first establish a *prima facie* case of retaliation by a preponderance of the evidence. *See Lamb v. Qualex, Inc.*, 33 Fed. Appx. 49, 60 (4th Cir. 2002). To do so, a plaintiff must prove that (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id.*; *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001). If the plaintiff satisfies this burden, then her employer must articulate a legitimate non-retaliatory reason for its action. *See Lamb*, 33 Fed. Appx. at 60. Should the employer do so, then the plaintiff must prove by a preponderance of the evidence that the employer's articulated reason is pretext and that the real reason for the employer's action was to retaliate against her for having taken the protected action of requesting an accommodation. *Id.*

---

[2] As far as the Court can tell, the plaintiff has not pled any claim for a failure to accomodate. (See generally Compl. & Pl. Resp. Summ. J.)

11

### A. *Prima Facie* Case

#### 1. Protected Activity

The defendant first contends that the plaintiff cannot establish the first element of her *prima facie* case that she engaged in any protected activity. Specifically, the defendant argues that the plaintiff did not file any charge of discrimination until July 1, 2009, after she had been denied the Zoning Administrator/Senior Planner position. Thus, she could not have been rejected for having filed it. The plaintiff, however, characterizes a memorandum she submitted to Human Resources Director Greg Troutman, on June 12, 2009, along with her application for the Zoning Administrator/Senior Planner position, as protected opposition activity.

"Protected activity" under the ADA falls into one of two categories: opposition or participation. *Crawford v. Metro. Gov't of Nashville & Davidson County*, 555 U.S. 271, 129 S.Ct. 846, 850 (2009). An employee need not instigate or initiate a complaint to be covered by the opposition clause. *Id.* at 851. To establish that she engaged in protected opposition activity, a plaintiff must show that she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring. *See Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003). Participation, which receives broader protection than opposition conduct, includes: "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing" under federal employment discrimination laws. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir.1998) (Title VII).

The plaintiff has not made any effort to rely on the "participation" activity of her formal charge of discrimination. In defense of her retaliation claim, she has exclusively emphasized the memorandum as alleged opposition.

Although the subject line of the memorandum read "Americans with Disabilities Act (ADA)," the memorandum does not allege, in any respect, that the plaintiff had been

12

discriminated against because of her disability. It simply referred to the plaintiff's hearing-impairment as a disability and reminded the defendant of its obligations under the ADA:

> As you and others are aware, I require the use of hearing aids and have used hearing aids during the almost three years that I have been employed with Georgetown County. I have been hearing impaired most of my life. This disability has made it a challenge in my careeras a professional city/county planner. However, I have overcome my disability to become a highly skilled planner and one recognized as such by the national planning association's accreditation program.
>
> My hearing impairment has also led to my being self conscious and I am not as outgoing as others. Often I am viewed as an outsider and not part of the social circles where I am employed. But, this in no way affects my work ability, nor my professionalism. At this time I would like to remind you and the County Administrator of the Americans with Disabilities Act. Further, I would like to point out the U.S. Equal Employment Opportunity Commission
> enforcement of disability discrimination. (sic) In addition, the South Carolina Human Affairs Law specifically covers employment discrimination on the basis of race, color, national origin, religion, age, sex, and disability.
>
> I am retaining a copy of this letter and request that a copy of it be added to my personnel file at this time.

[Doc. 23-8 at 6.] Troutman tried to discuss with the plaintiff what she intended by the memorandum, but the plaintiff admits that she refused to discuss the memorandum with him and walked out of his office. (Pl. Dep. at 62-63.)

The ADA requires that the opposition activity be directed towards conduct by the employer that is unlawful under the particular statute in question. See 42 U.S.C. § 12203(a). The Fourth Circuit, in an unpublished opinion, stated with respect to opposition activity under Title VII (which employs similar language to the ADA and FMLA), "the 'opposition clause,' by its very terms, requires that the employee at least have actually opposed employment practices made unlawful by Title VII. That is to say, the clause protects opposition neither to all unlawful employment practices nor to practices the employee simply thinks are somehow unfair." *McNair v. Computer Data Sys., Inc.*, 172 F.3d 863, 1999 WL

13

30959, at *5 (4th Cir. Jan.26, 1999). Other courts have similarly concluded. *See, e.g., Jeseritz v.. Potter*, 282 F.3d 542, 548 (8th Cir.2002) (finding opposition activity must be directed towards employer behavior that the employee reasonably believes to be "in violation of the statute in question"); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir.1995) (finding in an ADEA case, "a general complaint of unfair treatment does not translate into a charge of illegal age discrimination"); *Peeples v. Coastal Office Prods., Inc.*, 203 F.Supp.2d 432, 466 (D. Md.2002) (finding an email from an employee claiming he was "protected by the ADA" was not opposition activity because it did not claim the employer "was then or was about to violate the ADA").

The memorandum at issue here does not identify any unlawful employment practice or otherwise indicate the subjective belief of the plaintiff that such a practice had occurred or was occurring. In every respect, the memorandum is preemptive at best. Taken at face value, it is informational in its plain language or maybe a possible warning against *future*, rather than past or present, conduct. It, however, technically opposes nothing. The Court does not see how it might construe the memorandum any other way.

Accordingly, the plaintiff cannot establish her *prima facie* case of retaliation.

The Court is sorry for the separation of the plaintiff's employment. The undersigned also regrets any personal insecurities and inhibitions suffered by the plaintiff due to her hearing impairment. But, the record is not impressive. Apart from the mechanical failings of the evidence in light of *McDonnell Douglas* already discussed, the Court would further emphasize the general impotence of the evidence to imply in any respect unlawful and discriminatory conduct on the part of the defendant. Of course, *McDonnell Douglas* necessarily recognizes that clear evidence of discrimination will be hard to uncover. Even still, this case raises essentially no suspicions. The Court could not recommend that any jury should be allowed to conclude differently; they could not.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 23] be GRANTED. All claims should be dismissed *with prejudice*.

IT IS SO RECOMMENDED.

                                                  s/Bruce H. Hendricks  
                                                  United States Magistrate Judge

April 13, 2012  
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).